[No. 1,055.]

## MARY WALL ET AL., APPELLANTS, *v.* LOUIS TRAINOR ET AL., RESPONDENTS.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—MATERIALITY OF—AUTHORITY OF AGENT.—On the trial plaintiffs testified that they sold a quantity of hay to one Dwelly as the agent of defendants. Defendants testified that the hay was sold to Dwelly as the agent of a corporation. Plaintiffs recovered judgment, and the court granted a new trial upon the ground of newly discovered evidence: *Held*, that admissions made by plaintiffs, before and after the trial, that they sold the hay to Dwelly as agent for the corporation, was material, regardless of the question whether Dwelly had the authority to make the purchase.

IDEM—WHEN TESTIMONY IS NOT CUMULATIVE.—Testimony is only cumulative which is in addition to, or corroborative of, what was given at the trial. If the newly discovered evidence brings to light some new fact bearing upon the main question at issue between the parties, and it would be likely to change the result, a new trial should be granted.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts are stated in the opinion.

*Pierce Evans* and *William Cain,* for Appellants:

I. If M. B. Dwelly pretended to act as the duly authorized agent of the California Fruit and Meat Shipping Company in the purchase of the hay, the testimony shows without conflict that he was not; and it further appears that this corporation never ratified his acts by acceptance or measurement of the hay or by paying a single dollar of the purchase money; hence, there was no contract for the sale of this hay between plaintiffs and the corporation. There was no sale ever intended by plaintiffs to Dwelly by either party; hence there was no contract between those two parties, and so

there was no sale to the corporation nor to Dwelly; and the title had not passed from plaintiffs, and was in them, even under the theory and proposed testimony and proof of defendants, when they measured and fed the hay to their cattle. (Benjamin on Sales, 406, sec. 443; *Cundy* v. *Lindsay,* 19 Eng. Rep. 237; 24 E. R. 345; *Hardman* v. *Booth,* 1 Hurlst. & Colt (Exch.), 803; *Higgins* v. *Burton,* 26 L. J. (Exch.) 342; *McGoldrick* v. *Willits,* 52 N. Y. 612; *Pease* v. *Smith,* 61 Id. 477; *Bearce* v. *Bowker,* 115 Mass. 129.)

II. Before granting a new trial, the court must be satisfied that the newly discovered evidence is so material that it would probably produce a different verdict if the new trial were granted. (1 Saw. 291.) The evidence is merely cumulative. (*Gray* v. *Harrison,* 1 Nev. 502; *Howard* v. *Winters,* 3 Id. 542.)

III. The action is proper in form, and no objections have been taken thereto in the court below. (*McGoldrick* v. *Willits,* 52 N. Y. 620; 2 Greenl. Ev., sec. 108; *Wiegand* v. *Sickel,* 3 Keys, 122; *Coghill* v. *Marks,* 29 Cal. 677.

*Webster & Rankin,* for Respondents.

By the Court, LEONARD, C. J.:

Plaintiffs obtained verdict and judgment for one thousand two hundred and fifty dollars, balance alleged to be due for hay claimed to have been sold to defendants. The court granted a new trial on the ground of newly discovered evidence material for the defendants, which they could not with reasonable diligence have discovered and produced at the trial. This appeal is from the order granting a new trial.

It is not disputed that plaintiffs sold the hay to one Dwelly, acting as agent either for the defendants or the California Fruit and Meat Shipping Company, a corporation incorporated in the state of California, doing business in this state. Plaintiffs claimed, and their evidence tended to show, that Dwelly made the purchase as the agent of defendants, while defendants claimed, and their evidence tended to show, that he was not their agent, but was the

agent of said corporation, that is to say, general superintend-ent, and that he purchased the hay for the corporation. The principal question agitated at the trial was, "To whom was the property sold?"

It is urged by counsel for appellants that the newly discov-ered evidence is not material, and that it is cumulative.    If they are correct as to either assertion, a new trial should not have been granted upon the ground stated by the court. The claim of immateriality is based upon the statement that, "Dwelly knew he was not contracting for the corporation, and that he had no authority to purchase; * * * that the only evidence to help defendants would be to the effect that, Dwelly actually had authority, or that the corporation had actually purchased it, or had ratified his unauthorized acts."

It makes no difference in this action, whether the corpora-tion purchased the hay or not, except that it may be said if the purchase was made by the corporation it could not have been made by the defendants.    The question to be decided was: Did the *defendants* make the purchase?    That fact could not be established affirmatively by proving that Dwelly was not authorized to purchase for the corporation. If the defendants could prove that the sale was actually made to the corporation through Dwelly, its general super-intendent, that proof would negative the idea that it was made to defendants, whether Dwelly was authorized to make the purchase or not.    There was, in fact, no testimony that he had not authority; but had ample proof of that fact been made, plaintiffs ought not to have recovered without satis-fying the jury that Dwelly acted as agent for defendants, or that they ratified his purchase after being advised of the facts.    So it is not true that the only evidence that will help defendants is proof of Dwelly's authority. ' The burden of proof was upon the plaintiffs to show that they sold to de-fendants.    In the absence of such proof, they could not recover in any event; but there was evidence tending to establish that fact, as well as evidence tending to disprove it.    Plaintiffs testified, positively, that they sold to Dwelly for defendants, and that the corporation was not mentioned;

while Dwelly and Trainor were as positive that the corporation was the purchaser, and that defendants were strangers to the transaction. Such being the facts, it is idle to deny the importance to defendants of admissions by plaintiffs, made before and after the trial, that they sold the hay to Dwelly for the corporation, regardless of the latter's authority to make the purchase.

We now come to the second objection: Is the newly discovered evidence cumulative? In *Gray* v. *Harrison*, 1 Nev. 508, the court said: "These admissions  *  *  *  are new and independent facts, unknown to defendants at the time of trial. Had these admissions been proven at the trial the testimony of other witnesses to the same admissions would be merely cumulative. But that only is cumulative which is in addition to, or corroborative of, what has been given at the trial. To render evidence subject to this objection it must be cumulative, not with respect to the main issue between the parties, but upon some collateral or subordinate fact bearing upon that issue.  *  *  *  If the newly discovered evidence brings to light some new fact bearing upon the main question, and it would be likely to change the result, a new trial should be granted." (See authorities cited in the opinion.)

"The rule that newly discovered evidence must not be cumulative, though well settled, has an *occasional* exception. Where, by admitting it, what was before mysterious and doubtful becomes plain and certain, so that if received the most obvious justice, and if rejected the most palpable injustice, will be done, courts do not hesitate to adopt the former alternative." (Graham and Waterman on New Trials, vol. 3, 1064.) There was no testimony as to admissions by plaintiff, Mary Wall, that the hay was sold to the corporation. The only evidence of any admission by her was her own statement upon cross-examination, that she "might have said in Miss Harney's milliner shop that she had sold her hay to Dwelly."

As to her, the newly discovered evidence is that, she stated to affiant Coats, about the time of the sale: "Well, I have sold my hay.  *  *  *  I have sold it to Dwelly for the

Meat Shipping Association;" that she "did not mention Trainor or Graham's names, or any one else, but said she had sold her hay to Dwelly for the Meat Shipping Association;" that she always said "she looked to Dwelly for the payment." Her testimony at the trial supported plaintiffs' theory that the sale was to defendants and not to the corporation. As to this plaintiff's alleged admissions, there is no ground for the claim that the newly discovered evidence is cumulative. ·

Some portions of the alleged admissions of plaintiff McCrey were testified to upon the trial. Defendant Trainor stated that, he told McCrey he "had contracted the cattle to the Meat Shipping Association, and asked him if it was responsible, and he said it was perfectly responsible;" that "they had sold their hay to it and the company had not yet paid them, but he only wished it owed them five times as much as it did." And another witness (Brown) said that "about November 1, 1878, McCrey told him he had sold two hundred and fifty tons of hay to Dwelly for the Meat Shipping Company, at seven dollars a ton;" and that "McCrey always spoke of the sale in the same way."

As to McCrey's admissions set out as newly discovered, much of it is like that stated by witnesses Trainor and Brown. But there is much in addition. This is especially true of the evidence newly discovered, as to what McCrey told W. F. Berry before and after the trial, if Berry speaks the truth. He states in his affidavit, among other things, that a few days before the trial, McCrey said to him that he "looked upon Louis Trainor, defendant, as a very honorable man;" that he was "sorry anything had occurred between himself and Trainor (meaning the lawsuit), and if he had sold his hay to Trainor he would not have had any trouble about getting his pay for his hay, as he believed;" but that he "had sold his hay to Dwelly to feed stock that Dwelly had bought for the Meat Shipping Company;" * * * that "a few days after the trial, at Reno, McCrey stated to him that they had gained the suit, and he was sorry about the matter, but he had to try and get his money;" that "he had sold his hay to Dwelly for the Meat Shipping Company,

but that he could not get his money from that company;" that "Trainor's cattle had eaten the hay and Trainor should pay for it;" that "he should have his pay from somebody, since he could not get it from the Meat Shipping Company;" "that he did not expect any trouble about his money until the Meat Shipping Company refused to honor the last checks he received from Dwelly." Much of this evidence is not cumulative in the proper sense of that word. The court did not err in granting a new trial upon the ground stated in its order, and the order is affirmed.