[No. 1152.]

JONAS PINSCHOWER, ET AL., RESPONDENTS, v. W. J. HANKS, APPELLANT.

VERDICT—CONFLICT OF EVIDENCE.—There must be a clear preponderance of evidence against the verdict to warrant any interference by this court. If there is a substantial conflict in the testimony, upon material points, the verdict will be sustained.

ACTION AGAINST PARTNER UNDER FIRM NAME—DORMANT PARTNER, ABATEMENT.—The failure to join a dormant partner as defendant in an action against the partnership cannot be pleaded in abatement. Upon a judgment against the ostensible partners in the firm-name, the interest of all the partners, whether named or not, will pass to the sheriff's vendee.

IDEM—EXCLUSION OF DEPOSITION—ERROR NOT PREJUDICIAL.—It appearing that the acts and declarations of Isadore Rich, relative to the matters in controversy, were all admitted without objection: Held, that the ruling of the court in excluding certain depositions showing that he was a member of the firm of Rich Bros., was not prejudicial to defendant.

REFRESHING MEMORY OF WITNESS—READING STATEMENT.—An attorney in testifying to statements made by a witness, in his presence, was allowed to refresh his memory by referring to, and reading, a written statement made by himself. He testified to the correctness of the facts set forth in the statement: Held, that it was not the written statement, but the recollection of the witness, that was given in evidence and that it was not erroneous to allow the witness to refresh this recollection by reading the statement.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE.—An affidavit for a new trial on the ground of newly discovered evidence which states that the attorney "diligently searched for testimony to establish the defense" is insufficient. It is too general. The acts performed should by particularly stated so as to enable the court to determine whether the conclusions stated are supported by the facts.

IDEM—NOMINAL PARTY—The nominal party to an action is required to use the same degree of diligence as if he was the real party to the suit.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

W. E. F. Deal, for Appellant.:

I. The evidence was insufficient to justify the verdict of

the jury, and the verdict was against the law, in that the weight of the evidence is against the verdict. The evidence of the respondents destroyed itself by its utter improbability, by palpable contradictions as to material facts about which they could not have been simply mistaken and which should have led the lower court to apply the rule that when a witness willfully testifies falsely to a material fact, the whole of this evidence should have been disregarded.

II. The court below erred in denying appellant's motion for a new trial. If it be true that the weight of the evidence clearly preponderates against the verdict, then it was not only in the power of the lower court to set aside the verdict, but it was its duty to do so. (*Phillpots* v. *Blasdel*, 8 Nev. 61.) If the evidence in this case presented in the transcript clearly shows such a state of facts that it is made clearly to appear to the court that the verdict was wrong, and clearly an injustice, then this court can come to no other conclusion than that the lower court should have granted a new trial, and that its refusal was error. (Hill. on New Tr., 447, and authorities there cited.)

III. The court erred in refusing a new trial upon the newly discovered evidence set forth in appellant's affidavits. The court refused to consider the affidavits of Joseph E. McDonald and Charles Harper, in its consideration of the motion for a new trial, on the ground that they were deputies of defendant, and were witnesses in the case, and this was error. The sole question addressed to the court as to this was whether the evidence could have been by the aid of due diligence discovered by defendant and produced at the trial. Here the defendant was in fact merely a nominal party. His name was used and that was all. He had no interest in the case except to see that he had a good bond to protect him against any judgment that might be recovered against him.

IV. The court below erred during the trial in refusing to admit in evidence the depositions of B. Pulverman, H. Glauber, Isadore Lowenberg and William Cohen. These

depositions showed beyond any question that Isadore Rich was a member of the firm of Rich Brothers. It was material to connect him with the alleged frauds. It was proper to do this to show him to be one of the principals. He got the money, if any was got, from the respondents; and he was the principal party, the originator and perfector of the whole job, his natural talents in that direction being improved by a former experience of the same sort; and yet all of this evidence was kept from the jury against appellant's objections.

V. The court erred in permitting the introduction in evidence of the paper written by Mr. Stephens containing the substance of the result of an examination of Joseph Rodgers, made at the request of the respondents. This paper was introduced and read for the purpose of impeaching Rodgers' testimony. No proper foundation was laid for this purpose, and it was error to permit the reading of it to the jury. (Green on Ev. sec. 462–466.)

*Kirkpatrick & Stephens* and *Wm. Woodburn,* for Respondents:

1 The authorities are to the effect that a *nisi prius* court ought not to grant a new trial when the evidence is conflicting, except the weight of evidence clearly preponderates against the verdict. But when such court does grant a new trial, the appellate court will not interfere unless the weight of evidence clearly preponderates against the ruling of the court. (*Treadway* v. *Wilder,* 9 Nev. 67; *Carlyon* v. *Lannan,* 4 Nev. 156; *Reed* v. *Reed,* 4 Nev. 395; *Quint* v. *Ophir S. M. Co.,* 4 Nev. 304; *Covington* v. *Becker,* 5 Nev. 281; *State of Nevada* v. *Yellow Jacket S. M. Co.,* 5 Nev. 415; *Clark* v. *Nevada Land & M. Co.,* 6 Nev. 203; *Lewis* v. *Wilcox,* 6 Nev. 215; *McCoy* v. *Bateman,* 8 Nev. 127; *Solen* v. *V. & T. R. R. Co.,* 13 Nev. 107; *Smith* v. *Mayberry,* 13 Nev. 427.) In this case the weight of evidence is clearly in favor of respondents.

II. The defendant has not shown diligence in procuring the newly discovered evidence. He has not made an affi-

davit showing that he could not have procured the testimony at the trial, or that the facts set out in the affidavit of the witnesses were not within his knowledge. No person can make this affidavit for him, and his failure to make it is fatal to his right to a new trial. (*Arnold* v. *Skaggs*, 35 Cal. 687 ; *Baker* v. *Joseph*, 16 Cal. 180.) It was the duty of the defendant to ascertain what Harper and McDonald knew about the case, and produce their testimony upon the trial of the cause. The failure to do so was inexcusable negligence on the part of defendant, and is not ground for a new trial. (*Fanning* v. *Craney*, Morrison (Iowa) 398; *Carson* v. *Cross*, 14 Iowa 464 ; *Wright* v. *Alexander*, 11 Smede & Marshall 411 ; *Arnold* v. *Skaggs*, 35 Cal. 687; *Philips* v. *Ocmulgee Mills*, 55 Geo. 633; *Gautier* v. *Douglass Man. Co.*, 52 How. Pr. 325 ; *Archer* v. *Heidt*, 55 Geo. 200.)

III. The objection made to the witness Stephens reading the statement made to him by Joseph Rodgers was properly overruled. The reasons given by the court are incontrovertible, namely : that the plaintiffs were not introducing the paper in evidence for any purpose; that the witness had the right to refresh his memory as to the statement made to him by Joseph Rodgers. (*Riordon* v. *Davis*, 9 La., 239 ; 1 Stark on Ev., 128.)

By the Court, HAWLEY, C. J.:

This action was brought to recover damages for the conversion of certain personal property, consisting of a stock of clothing, which originally belonged to the firm of Rich Bros.

The plaintiffs in this action brought suit against A. Rich and J. Rich, alleged to constitute the firm of Rich Bros., attached the property, recovered judgment by default, and purchased the property under an execution sale in said action. After the delivery of the property to them by the sheriff, and on the same day, the property was levied upon under an attachment issued in an action commenced by the Colman Bros. against A. Rich, Isadore Rich, and J. Rich,

alleged to be copartners under the firm name of Rich Bros. Colman Bros. obtained judgment and the property in question was sold under execution in that action.

The defendant in this action is the sheriff of Storey county, and in his answer justifies his seizure and sale of the property under and by virtue of the proceedings in *Colman Bros.* v. *Rich Bros.* He alleges that the notes upon which the action of *Pinschowers* v. *Rich Bros.* was instituted (except a note to Kirkpatrick & Stephens for $1,000) were fraudulent, and were made for the purpose of hindering, delaying and defrauding the creditors of Rich Bros.

1. It is earnestly argued by defendant's counsel that the evidence in this case is insufficient to justify the verdict in favor of plaintiffs. The testimony which plaintiffs gave in their own behalf seems to be, in some respects, improbable; but in several material and important points it was corroborated by impartial witnesses, and after a careful examination we are unable to say that it should be rejected, and considered so false upon its face that no verdict should be allowed to stand upon it. Their testimony is not free from suspicion; but there is nothing in the record that would justify us in saying that it is " utterly untrustworthy." The character of the testimony offered by defendant to impeach and destroy the testimony of plaintiffs, and to show that the notes, hereinbefore referred to, were fraudulent, is, in many respects, at least, as suspicious and improbable as the testimony of plaintiffs. In this state of the case, it was the duty of the jury and the district judge to determine, from all the facts before them, the truth or falsity of the testimony as given by the respective witnesses. If they consider the testimony of plaintiffs worthy of credit, the evidence is sufficient to sustain the verdict. There is not such a clear preponderance of evidence against the verdict as to warrant any interference by this court. There is a substantial conflict of evidence upon material points, and, under the rule so frequently announced by this court, the verdict will not, upon this ground, be disturbed.

2. It is claimed that the court erred in excluding certain

depositions showing that Isadore Rich was a member of the firm of Rich Bros. We are of opinion that this question is immaterial. The respective suits were brought against the firm of Rich Bros. The notes sued upon in *Pinschowers* v. *Rich Bros.* were executed in the firm name, and the plaintiff's in that action were entitled to recover, if at all, whether Isadore was a member of the firm or not, or whether he was made a party to the suit. (*Whitmore* v. *Shiverick*, 3 Nev. 306; *Brown* v. *Birdsall*, 29 Barb. 549; *Wright* v. *Herrick*, 125 Mass. 154.) The defendants in that action might, perhaps, have taken advantage of the defect of parties defendant by plea in abatement. But if Isadore was a dormant partner, then the non-joinder could not have been successfully pleaded by them. "Much less can it be pretended that, upon a judgment against ostensible partners, in the firm name, the interest of the partners not named will not pass to the sheriff's vendee." (*Taylor* v. *Henderson*, 17 Serg. & R. 453; *Harper* v. *Fox*, 7 Watts & S. 142; *Grier* v. *Hood*, 1 Casey 430; *Carey* v. *Bright*, 58 Penn. St. 84.) The declarations of Isadore Rich were not objected to. All of his acts and conduct, with reference to the question whether the transaction between the Pinschowers and the Rich Bros. were fraudulent, were admitted in evidence without objection. Under these circumstances the court did not err, to the prejudice of defendant, in excluding the depositions.

3. Joseph Rodgers, who testified in favor of defendant, was asked upon cross-examination whether he did not, at a certain time and place, and in the presence of certain parties, make a certain statement, as to facts within his knowledge, at variance with his testimony on the trial. He answered that he made no such statement. The attorney for plaintiffs was called as a witness, in rebuttal, and testified that the witness Rodgers came to his office, at the time named, and made a statement as referred to in the cross-examination of the witness; that this statement was written down by the attorney and read to the witness Rodgers; that Rodgers did not sign it, but stated that it was correct, and

that he would so testify, if called as a witness, upon the trial of the case.    The attorney, when asked what statement Rodgers made, asked leave of the court to refresh his memory by referring to the written statement, and, leave being granted, he then read aloud the written statement as taken down by himself. . It is contended that the court erred in permitting the attorney to read this statement. The written statement was not offered in evidence for any purpose.    The attorney had the right to examine the paper for the purpose of refreshing his memory as to the statement made by Rodgers.    He testified to the correctness of the facts set forth in the statement as read by him.    It was not the written statement, but the recollection of the witness, that was given in evidence.    It was not erroneous to allow the witness to refresh this recollection by reading the statement.    (*Cooper* v. *State*, 59 Miss. 272 ; *Halsey* v. *Sinsebaugh*, 15 N. Y. 486 ; *Guy* v. *Mead*, 22 N. Y. 465 ; *Krom* v. *Levy*, 1 Hun. 173 ; *Com.* v. *Ford*, 130 Mass. 64.)

4. Upon the motion for a new trial, on the ground of newly-discovered evidence, defendant presented the affidavits of Joseph McDonald and Charles Harper, who were his deputies, tending to show that the suit of *Pinschowers* v. *Rich Bros.* was fraudulent ; the facts alleged being declarations made by A. Rich, after the attachment was levied, to the effect that they (Rich Bros.) had been working for the San Francisco creditors long enough, and did not intend that they should catch them again, and the request of A. Rich to have Joseph Rodgers put in charge as keeper, and other matters of like import, leading deponent Harper to believe, from what was said, ''that all the expenses were borne by Rich Bros., and that the suit and attachment was, through some arrangement, between Rich Bros. and plaintiffs ;'' and giving McDonald to understand '' that said suit in which said attachment was issued, and said attachment, was a job between the plaintiffs    *    *    *    and the said A. Rich and J. Rich.''    The record shows that Joseph McDonald was subpœnaed as a witness and testified to other matters on behalf of the plaintiffs and the defendant, and

that Charles Harper was subpœnaed and was present, but did not testify, at the trial. They state, in substance, that they considered that defendant was merely a nominal party to the action, and that he and his deputies should stand neutral as between the parties, and hence they never stated the matters tending to establish the fraudulent character of the transaction between plaintiffs and the Rich Bros. to the defendant or to his attorney, or the Colman Bros., until after the verdict in this action was rendered, and that they make the statement set forth in their affidavit in the interest of justice, believing that a wrong has been committed by the verdict.

It is important, first, to determine whether the defendant used due diligence to procure the testimony within the knowledge of the witnesses making these affidavits. It seems manifest to us that no such diligence is shown as the law requires. No affidavit was made by the defendant or the Colman Bros. The statement in the affidavit of defendant's attorney, that "he diligently searched for testimony to establish the defense made by the amended answer in this action," and other like averments as to the diligence used by the defendant and the Colman Bros. is too general. The acts performed by them should be particularly stated, so as to enable the court to determine whether the conclusions stated in the affidavit are supported by the facts. It is the duty of litigants to be active and diligent in procuring the testimony upon which they rely to maintain their cause. Trials are not to be encouraged as experiments. A party is not allowed to present his case by piecemeal; to take a part of the facts first, and then, if he fails, apply for a new trial, and seek to strengthen his case by a statement of other facts which were reasonably within his power to present at the first trial. He must make diligent search and inquiry in advance of the trial, and be able to show, to the satisfaction of the court, that he used reasonable diligence.

It matters not whether the defendant is the real or nominal party to the action. He certainly cannot claim that he

is entitled to a new trial because he is only a nominal party to the suit. If the Colman Bros. were the real parties in interest, it was their duty to make reasonable efforts to ascertain and procure the testimony upon which they relied, to establish the fact that the suit of *Pinschowers* v. *Rich* was fraudulent. Witnesses were introduced who testified to acts and declarations of the Rich Bros. and the plaintiffs at, prior to, and after the attachment in that suit was levied, tending to show that the transaction was fraudulent. McDonald and Harper were the officers who levied the attachment, and one of them took charge of the property as keeper. In the very nature of the case, their position was such that they were liable to hear and know what the Rich Bros. and the plaintiffs had to say or do (if anything) about the transaction, and it was the duty of the defendant and of Colman Bros. to inquire of them whether they had heard or seen anything tending to show the true nature of the transaction. Ordinary prudence suggests that they should have pursued this course. Their failure to do so constitutes such inexcusable negligence as to prevent them from availing themselves of the facts set out in the affidavits.

In *Arnold* v. *Skaggs* the court said : "As to the witness Covey, the case not only fails to show diligence in preparing for trial, but shows negligence. He was called by the defendant as a witness and examined at the trial, and the most ordinary diligence on the part of the defendant or his counsel would have led to the discovery of what further, if anything, he knew about the case. That the discovery, under such circumstances, was not made until after the trial, must be attributable to negligence." (35 Cal. 687.)

In *Howard* v. *Winters* this court said: "It is for the public good that there be an end to litigation. When, therefore, a trial has been held, and a judgment rendered, a second trial should only be granted to further the ends of justice, and not to relieve litigants from the consequences of their own laches, thoughtlessness, or neglect. The law demands of the parties all reasonable diligence and caution in preparing for trial, and furnishes no relief for the hardships

resulting from inexcusable negligence or want of diligence. When, therefore, a new trial is sought because of newly-discovered evidence, it should most certainly be shown by the party making the application that his failure to produce such evidence at the first trial was not the result of any negligence upon his part. Of that fact the court should be perfectly satisfied. To grant new trials upon this ground, where no such showing is made, would simply be giving encouragement to negligence, and judicial approval to inexcusable carelessness." (3 Nev. 542.)

The authorities cited by respondent are to the same effect. (See, also, *Toney* v. *Toney,* 73 Ind. 36 ; *Zickefoose* v. *Kuykendall,* 12 W. Va. 30 ; *Atkinson* v. *Connor,* 56 Me. 550 ; *Blake* v. *Madigan,* 65 Me. 530 ; *Brown* v. *Luehrs,* 95 Ill. 197.)

The judgment of the district court is affirmed.