CHARLIE LEE FISHER, Appellant, *v.* JANE LEE FISHER, Respondent.

No. 15069

October 19, 1983       670 P.2d 572

*Robert A. Grayson,* Carson City, for Appellant.

*Jaquette & Kilpatrick,* Carson City, for Respondent.

---

## OPINION

*Per Curiam:*

This is an appeal from an order dismissing a petition for the appointment of a guardian. Appellant contends that the district court erred by summarily dismissing the petition. We agree and therefore reverse and remand.

Respondent (Jane) was married to appellant (Charlie) in 1973, some thirteen months after a daughter was born to Jane and her former husband. That child is the subject of this appeal. Jane and Charlie were married some eight and one-half years, during the first year of which they had a son.

Charlie, Jane and the children lived together outside of Nevada until October, 1981, when Charlie moved to this state. The children joined him here on December 26, 1981, and have resided with him in Nevada continuously since that time.

On December 31, 1981, Charlie filed an action for divorce and a petition for custody of the daughter. Jane, meanwhile, had filed for divorce in Montana. The Nevada actions were dismissed, and a decree of divorce was entered in Montana in April, 1982. Custody of the son was awarded to Charlie. The daughter's status was apparently unlitigated in those proceedings.

The daughter had lived with both parties during the eight

years of marriage, but has now resided with Charlie to the exclusion of Jane for almost two years.

Charlie filed a petition for appointment of himself as guardian for the daughter on July 7, 1983. Jane filed a motion to dismiss, and a hearing was held on the motion on August 10, 1983. The district court summarily dismissed Charlie's petition and *sua sponte* "restored" custody of the daughter to Jane. It appears, however, that the legal and physical custody of the daughter has never been adjudicated. This appeal followed.

We note at the outset that an ex-stepparent has "standing" to seek guardianship as a "concerned person." *See* NRS 159.044(1). Furthermore, a guardian, except as otherwise ordered by the court, "has the care, custody and control of the person of the ward, and has the authority and . . . shall perform the duties necessary for the proper care, maintenance, education and support of the ward. . . ." NRS 159.079(1). It is obvious that Charlie sought to obtain legal recognition of his relationship with the daughter so that he might properly execute the duties that his physical custody of the daughter required.[1] *See* NRS 159.079.

At the hearing below, Charlie offered to prove that Jane had voluntarily relinquished custody, that she had not contacted the daughter during the ten months between the divorce and the hearing, and that the daughter's best interest would be served by leaving her in Charlie's household. The district court, however, did not admit any evidence before summarily dismissing the petition and *sua sponte* ordering that custody of the daughter be "restored" to Jane. This was error.

We note that there have been many recent cases in other jurisdictions addressing custody disputes between parents and non-parents, and that these cases have involved disparate approaches and have resulted in varied conclusions. *See, e.g.,* Turner v. Pannick, 540 P.2d 1051 (Alaska 1975); Clifford v. Woodford, 320 P.2d 452 (Ariz. 1957); Root v. Allen, 377 P.2d 117 (Colo. 1962); Pierce v. Pierce, 645 P.2d 1353 (Mont. 1982); Doe v. Doe, 399 N.Y.S.2d 977 (N.Y.Sup.Ct. 1977); Hutchison v. Hutchison, 649 P.2d 38 (Utah 1982). *See also* Carter v. Brodrick, 644 P.2d 850 (Alaska 1982) (visitation rights); Gribble v. Gribble, 583 P.2d 64 (Utah 1978) (visitation rights).

---

[1]The parties dispute at some length whether Charlie could have or should have sought custody during the divorce proceedings. That question is not before this court, and we express no opinion regarding the propriety of other proceedings through which a stepparent or ex-stepparent might seek custody.

The common theme of all of the above cases is a careful attention to the facts of each particular dispute and a primary emphasis upon the best interest of the child. These concerns are accorded no less consideration in Nevada. *See, e.g.,* McGlone v. McGlone, 86 Nev. 14, 464 P.2d 27 (1970); Murphy v. Murphy, 84 Nev. 710, 447 P.2d 664 (1968).

The guardianship statutes provide some direction to the inquiry of the district court. The legislature has clearly inserted a "parental preference" into guardianship determinations. *See* NRS 159.061. We agree, however, with the court in Doe v. Doe, *supra,* which held that "the welfare of the child is superior to the claim of the parent so that the right of the natural parent must yield where it clearly appears that the child's welfare requires that custody be granted to another." Doe v. Doe, 399 N.Y.S. 2d at 982. The scope of the district court's inquiry must necessarily be determined by the facts of each case.

Accordingly, we reverse the order of the district court dismissing the guardianship petition and "restoring" custody of the daughter to Jane, and remand this matter to the district court for an evidentiary hearing for the purpose of adjudicating the guardianship petition, including the legal and physical custody of the daughter.[2] *See* NRS 159.079(1). In accordance with the request of appellant's counsel, and in light of the prior history of this appeal, we direct that upon remand the case be heard by a different judge so as to avoid any appearance of impropriety. Additionally, respondent has expressed some concern that the petition was defective in that it did not state a "summary of the reasons why a guardian is needed" as required by NRS 159.044(2)(f). If, upon remand, the district court should determine that the petition is defective, the court shall permit appellant to amend the petition so that it conforms to statutory requirements. *See* Gunderson v. Barringer, 76 Nev. 133, 350 P.2d 397 (1960).

We have considered Jane's other contentions, including her res judicata argument, and find them to be meritless.

Reversed and remanded.

---

[2] It appears that in filing the guardianship petition, Charlie may not have intended to litigate the matter of physical custody, since the daughter was already living with him. The question of proper physical custody has clearly been raised in these proceedings, however, and the district court is directed to address both legal and physical custody.